UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

FRANK HARLEY DOYLE,

                Petitioner,                    Case No. 2:17-cv-52

v.                                     Honorable Gordon J. Quist

JOSEPH BARRETT,

                Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Frank Harley Doyle was incarcerated with the Michigan Department of Corrections (MDOC) at the Cooper Street Correctional Facility (JCS) in Jackson, Jackson County, Michigan when he filed this action. According to his MDOC profile, he is currently on parole. In 2014, Petitioner pleaded *nolo contendere* in the Chippewa County Circuit Court to one count of assault with intent to commit sexual penetration, in violation of Mich. Comp. Laws § 750.520g(1), and two counts of distributing or promoting child sexually abusive activity, in violation of Mich. Comp. Laws § 750.145c(3). In exchange for the plea, the state agreed to dismiss three counts of first-degree criminal sexual conduct under Mich. Comp. Laws § 750.520b, and five counts of conspiracy to commit child sexually abusive activity under Mich. Comp. Laws § 750.145c(2). On February 17, 2015, the court sentenced Petitioner to respective prison terms of 47 months to 10 years for the assault conviction and 47 months to 7 years for the child-sexually-abusive-activity convictions, to be served concurrently.

Petitioner appealed the state court's judgment to the Michigan Court of Appeals and the Michigan Supreme Court.  The Michigan Court of Appeals summarily denied leave to appeal on December 22, 2015, "for lack of merit in the grounds presented."  (12/22/2015 Mich. Ct. App. Order, ECF No. 5-11.)  The Michigan Supreme Court summarily denied leave to appeal on July 26, 2016, because it was "not persuaded that the questions presented should be reviewed by this Court."  (7/26/2016 Mich. Order, ECF No. 5-12.)  Petitioner did not seek further review from the United States Supreme Court.

Petitioner timely filed a habeas corpus petition in this Court on or about March 21, 2017, raising two grounds for relief, as follows:

I.      The trial court abused its discretion in denying [Petitioner's] motion to withdraw the guilty plea where the guilty plea was not voluntary nor accurate because he informed the court before and during sentencing that he was actually innocent, had new evidence to prove it and had entered the plea based on a misunderstanding of the law which was based on erroneous and defective advice of trial counsel[.]

II.     [Petitioner] is entitled to resentencing where the trial court erred in imposing an unreasonable sentence of 47 months on the minimum where correctly scored advisory guidelines were 5-23 months at the highest.

(Pet., ECF No. 1, PageID.5, 7.)

Respondent has filed an answer to the petition (ECF No. 4), stating that the grounds should be denied because they are meritless.  Petitioner has filed a reply in support of his petition. (ECF No. 6)  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I agree with Respondent that the grounds for relief are meritless.  Accordingly, I respectfully recommend that the petition be denied.

## Discussion

I.    Background

In January 2014, when Petitioner was 25 years old, he and a few friends attended a house party where high schoolers were present, including one extremely intoxicated 17-year old girl.  At some point in the evening, Petitioner met the girl in the back bedroom of the house and engaged in sexual activity with her while his friend took photographs.  In the photographs, the victim is nude, or partially nude, and Petitioner is posing next to her.

Early the following morning, Petitioner and his friends took the girl to Petitioner's residence.  The victim could not recall very much from the evening of the party or the following morning due to her intoxicated state, but she did remember waking up on a bed at Petitioner's residence.  Petitioner was on top of her, holding her legs and raping her.  She told him to stop, but she had difficulty speaking.  She saw Petitioner's friend Nicholas Gingras[1] next to the bed, sitting on a chair.  According to a presentence investigation report that Petitioner has attached to his petition, Petitioner and another friend repeatedly had sex with the victim in his bedroom; when the victim told Petitioner to stop, Petitioner and his friend told her to stop crying and resisting. (MDOC Presentence Investigation, ECF No. 1-14, PageID.159, 160.)  The victim sustained multiple injuries to her inner thigh as a result of what happened.

In February 2014, Petitioner was charged with three counts of first-degree criminal sexual conduct and the five counts of conspiracy to commit child sexually abusive activity.  (First Am. Compl., ECF No. 14-1, PageID.842-844.)  He was initially represented by attorney James

---

[1] Gingras later pleaded guilty to assault with intent to commit second-degree criminal sexual conduct.  *See* MDOC profile for Gingras, http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=953030 (visited Mar. 15, 2019).

3

Bias, but Bias moved to withdraw in May 2014.  (Case Register of Actions, ECF No. 5-1, PageID.218.)  The court granted the withdrawal motion a few weeks later and appointed attorney Ronald Varga to represent Petitioner.

On November 3, 2014, two days before his scheduled trial date, Petitioner signed a plea agreement.  (*See* Plea Agreement, ECF No. 14-2, PageID.852.)  In exchange for dismissal of the eight pending charges against him, Petitioner agreed to enter a plea to offenses with significantly lower penalties:  one count of assault with intent to commit sexual penetration and two counts of distributing or promoting child sexually abusive material or activity.  Instead of a maximum possible sentence of life in prison for each of the first-degree CSC charges, *see* Mich. Comp. Laws § 750.520b(2)(a), and 20 years for the child-sexually-abusive-activity charges, s*ee* Mich. Comp. Laws § 750.145(c)(2)(a), Petitioner faced a maximum possible sentence of 10 years for the assault conviction, *see* Mich. Comp. Laws § 750.520(g)(1), and 7 years for the convictions for distributing or promoting child sexually abusive activity, *see* Mich. Comp. Laws § 750.145c(3)(a).   In addition, the plea agreement expressly provided that the sentencing guidelines range would be 19 to 47 months.  (Plea Agreement, PageID.852.)

Petitioner entered his plea that same day.  At the plea hearing, the trial court made sure that Petitioner was aware of the new charges to which he would be pleading and that the other charges would be dismissed.  (Plea Hr'g Tr. 5-6, ECF No. 5-5.)  The court also informed him of the statutory maximum sentences for his offenses and that Petitioner would be sentenced under a guidelines range of 19 to 47 months of imprisonment, in accordance with the plea agreement.  (*Id.* at 6-7.)  In addition, the court told Petitioner that he would be subject to lifetime registration and monitoring under Michigan's Sex Offender Registration Act.  (*Id.*)  Petitioner acknowledged under

4

oath that he understood these consequences, and that his choice to plead guilty was a "knowing and voluntary" one.  (*Id.* at 7, 9.)

The court accepted a police report[2] as a "truthful and factual statement for the underlying offenses" because Petitioner claimed "acute intoxication."  (*Id.* at 11.)  The court apparently understood this to mean that Petitioner would not provide his own testimony to support his involvement in the offenses because he was so intoxicated at the time the offenses occurred that he could not remember his own conduct.

A presentence investigation report issued on December 10, 2014, calculating Petitioner's range of sentence under the guidelines as 34 to 67 months.  (PIR, ECF No. 1-14, PageID.157.)  A few days later, Petitioner asked to withdraw his plea.  His attorney brought the issue to the court in a written motion (ECF No. 1-7) and then at a hearing (*see* 1/20/2015 Mot. Hr'g Tr., ECF No. 1-9), but he let Petitioner argue the motion before the court.

Petitioner told the court that he is innocent and that he did not receive certain pieces of evidence before entering his plea, including the following: a medical examiner's report, notes that he allegedly sent to Gingras, DNA results (ostensibly from the victim's rape kit), witness statements, and statements from co-defendants.  (1/20/2015 Mot. Hr'g Tr. 8-9, 11.)  Petitioner also claimed that he had not had sufficient time to prepare for trial and that his first attorney refused to file a motion to quash the charge of conspiracy to commit child sexually abusive activity.  (*Id.* at 10-14.)  In addition, Petitioner asserted that he did not "fully" understand the terms of the plea, including the fact that he would be required to register as a sex offender for the rest of his life.  (*Id.*

---

[2] Respondent has filed a copy of this report at ECF No. 14-4.

at 15-16.)  And he felt that he had been "blind sided" by the presentence report because he thought that he would receive a better score.  (*Id.* at 16.)

Petitioner claimed that he was innocent of the charge of child sexually abusive activity because he had no intent to produce the photographs, but he believed that his attorney misled him into thinking that it would be difficult to overcome those charges.  (*Id.* at 17-18.)  In addition, Petitioner noted inconsistencies between a police report and a witness's actual statements, and between the search warrant and the police reports, particularly as to whether one of Petitioner's friends was present in the bedroom where the victim was raped.  (*Id.* at 20-21.)

The trial court denied Petitioner's motion.  It found nothing to substantiate Petitioner's claim of innocence.  (*Id.* at 27.)  In the court's view, the evidence that Petitioner presented at the motion hearing tended to support his guilt.  The court agreed with Petitioner's attorney's interpretation of the criminal statute regarding child sexually abusive activity.  The court also noted that Petitioner testified at his plea hearing that he understood the charges against him and the consequences, and that his choice to plead *nolo contendere* was a voluntary one.  The court asserted that Petitioner told the court that he could not recall what happened on the evening of the offense,[3] which undercut his claim of innocence.  The court concluded that Petitioner's real motive for withdrawing his plea was the presentence report.  Accordingly, the court found that the "interest of justice" did not support granting Petitioner's motion. (*Id.* at 32.)

---

[3] Nowhere in the plea hearing transcript does Petitioner tell the court that he could not remember what happened.  The trial court was either referring to a statement by Petitioner that is not in the record before this Court, or it was making an inference based on Petitioner's assertion of "acute intoxication" and his decision to use the police report, rather than his own testimony, as the factual basis for his plea.  In any event, Petitioner does not challenge the state court's assertion that he could not remember the events at issue.

The trial court issued its sentence several months after denying Petitioner's motion to withdraw his plea.  When doing so, the court used the 19-to-47-month range that the parties had previously agreed upon.  The court sentenced him at the top of that range.  (2/17/2015 Sentencing Tr. 21, ECF No. 5-8.)

A few months later, the Michigan Supreme Court held that Michigan's sentencing guidelines should be treated as advisory, rather than mandatory, in order to remedy the constitutional problem inherent in using facts found by a judge, rather than facts found by a jury or admitted by the defendant, to compel an increase in a sentence.  *See People v. Lockridge*, 870 N.W.2d 502, 515-16 (Mich. 2015).  Petitioner subsequently filed a motion for resentencing, arguing that the court should "strike" the scoring of certain offense variables because those variables were not supported by jury findings or admissions by Petitioner.  (Resentencing Tr. 4, ECF No. 5-10.)  The court denied the motion, noting that the parties "negotiat[ed] the guideline range" because they were "concerned that it was going to be significantly higher," and that Petitioner "relied on" the range used by the court.  (*Id.* at 6-7.)  The court also determined that its sentence would have been the same even if the guidelines were advisory.

Petitioner appealed and, as indicated above, the Michigan appellate courts summarily denied his applications for leave to appeal.

II.    AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a

person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy

this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

Where the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA.  *See Harrington*, 562 U.S. at 99; *see also Johnson v. Williams*, 568 U.S. 289, 298 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference).  The presumption, however, is not irrebuttable.  *Johnson*, 568 U.S. at 298.  Where other circumstances indicate that the state court has not addressed the merits of a claim, the court conducts *de novo* review.  *See id.* (recognizing that, among other things, if the state court only decided the issue based on a state standard different from the federal standard, the presumption arguably might be overcome); *see also Harrington*, 562 U.S. at 99-100 (noting that the presumption that the state-court's decision was on the merits "may be overcome when there is reason to think some other explanation for the state court's decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

When reviewing the basis for a summary appellate order of affirmance, the habeas court should apply the doctrine of *Ylst v. Nunnemaker*, 501 U.S. 797 (1991), and "look through" the unexplained order to the last reasoned decision of the state court, presuming that the reviewing court relied on the lower court's ruling. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). However, where there are convincing grounds to believe the silent reviewing court had a different basis for its decision than the analysis followed by the previous court, such as an adequate rebuttal by the state, the federal habeas court is free to find to the contrary. *Id.* at 1197.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

III.    Ground I:  Petitioner's Plea

Ground I of the petition raises various challenges to Petitioner's plea, and to the trial court's rejection of his request to withdraw that plea.

**A.  Abuse of discretion when denying motion to withdraw the plea**

Petitioner first contends that the trial court abused its discretion when denying Petitioner's motion to withdraw his plea. Petitioner argues that a court should allow a defendant to withdraw a plea when it is "in the interest of justice" to do so, citing *People v. Jackson*, 513 N.W.2d 206 (Mich. Ct. App. 1994). The "interest of justice" standard was incorporated into the

10

Michigan Court Rules in 1989; it applies to the withdrawal of a plea before sentencing.  *See* Mich. Ct. R. 6.310(B)(1).

To the extent Petitioner challenges the state court's application of the "interest of justice" standard, Petitioner does not raise a cognizable claim in this proceeding because that standard derives from state law, not federal law.  "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4 of the Rules Governing Habeas Corpus Cases).  The federal courts have no power to intervene on the basis of a perceived error of state law.  *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  Thus, this Court has no power to correct the state court's application of the "interest of justice" standard.

Moreover, the state court's refusal to allow Petitioner to withdraw his plea does not raise a claim of constitutional significance because Petitioner has no constitutionally guaranteed right to withdraw a plea.  *See Carwile v. Smith*, 874 F.2d 382 (6th Cir. 1989).  The only constitutional challenge that a habeas court may entertain with regard to a plea is that the plea was not entered in a knowing and voluntary fashion under the standards set forth in *Brady v. United States*, 397 U.S. 742 (1970), and *Boykin v. Alabama*, 395 U.S. 238 (1969).  A habeas court may not grant habeas relief on the basis of state law governing the taking or withdrawal of pleas.

11

*Riggins v. McMackin*, 935 F.2d 790, 794-95 (6th Cir. 1991).  Consequently, Petitioner's claim that he should have been permitted to withdraw his plea is not cognizable on habeas corpus review.

### B.  Failure to hold a hearing to establish a basis for the plea

Next, Petitioner contends that the state court erred by not holding a hearing to establish an accurate factual basis for his plea, as required by Rule 6.302(D) of the Michigan Court Rules.  This is another state-law issue that is not cognizable in these proceedings.  A constitutionally valid plea is one that "'represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"  *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).  "Absent a claim of innocence during the plea hearing, 'there is no constitutional requirement that a trial judge inquire into the factual basis of a plea.'"  *Eggers v. Warden*, 826 F.3d 873, 876 (6th Cir. 2016) (quoting *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975)); *see Higgason v. Clark*, 984 F.2d 203, 208 (7th Cir. 1993) ("'Strong evidence of guilt' may suffice to sustain a conviction on an *Alford* plea, and may be essential under Rule 11 [of the Federal Rules of Criminal Procedure], but it is not necessary to comply with the Constitution.") (quoting *Alford*, 400 U.S. at 31).  Because the state court was not constitutionally required to establish a factual basis for Petitioner's plea, its failure to provide a hearing establishing a factual basis does not give rise to a viable claim in these proceedings.

### C.  Involuntary plea (insufficient evidence)

Petitioner also contends that his plea was inaccurate and involuntary because there was no evidence that he conspired with another individual to take the sexually explicit photographs of the victim.  However, Petitioner's plea and conviction are not based on the conspiracy charges.

12

Those charges were dismissed.  Thus, the lack of evidence for the conspiracy charges has no bearing on the validity of Petitioner's plea.

Moreover, by entering his plea, Petitioner waived his right to challenge the evidence against him.  In Michigan, a plea of *nolo contendere* has essentially the same effect on the criminal prosecution as does a plea of guilty:

> Since a plea of *nolo contendere* indicates that a defendant does not wish to contest his factual guilt, any claims or defenses which relate to the issue of factual guilt are waived by such a plea.  Claims or defenses that challenge a state's capacity or ability to prove defendant's factual guilt become irrelevant upon, and are subsumed by, a plea of *nolo contendere*.  Hence, we hold that a plea of *nolo contendere* has the same effect upon a defendant's ability to raise an issue on appeal as does a plea of guilty.  Only those defenses which challenge the very authority of the state to prosecute a defendant may be raised on appeal after entry of a plea of *nolo contendere*.

*People v. New*, 398 N.W.2d 358, 363 (Mich. 1986) (footnotes omitted).  One such effect is that the plea waives a claim that the evidence of guilt was insufficient.  *See Post v. Bradshaw*, 621 F.3d 406, 426-27 (6th Cir. 2010) ("By pleading no contest, Post waived any objection to the sufficiency of the evidence[.]").

For all the foregoing reasons, Petitioner cannot claim that deficiencies in the evidence rendered his plea invalid.

### D.  Improper bindover

Petitioner contends that the charges against one of his co-defendants were dismissed because of an "erroneous bindover."  (Pet., PageID.33.)  According to Petitioner, the trial court acknowledged that it committed an error when it allowed the case against co-defendant Jason Bumstead (who allegedly took the photographs of the victim) to proceed on a theory of strict

liability for taking and/or possessing the photographs of the victim.[4]  Petitioner asserts that the bindover in his case was similarly flawed.

Petitioner cannot complain about defects in the bindover because he waived any challenge to such defects when he entered his plea.  "Like a plea of guilty, a plea of nolo contendere constitutes a waiver of all so-called 'non-jurisdictional defects' or, more accurately, any claims not logically inconsistent with the issue of factual guilt, as well as the right to contest the factual merits of the charges against him."  *United States v. Freed*, 688 F.2d 24, 25-26 (6th Cir. 1982). That waiver covered any defects in the bindover.  *See People v. Patterson*, No. 247746, 2004 WL 2389896, at *4 (Mich. Ct. App. Oct. 26, 2004) ("[B]y pleading nolo contendere to the homicide charge, defendant waived any right he had to challenge the sufficiency of the evidence to support . . . his bindover[.]").

It has long been the case that a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights.  *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  Claims about the deprivation of constitutional rights that occur before the entry of a guilty plea are foreclosed by that plea.  *See United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett*, 411 U.S. at 267.  As the United States Supreme Court has explained,

> a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and

---

[4] Petitioner's description of what happened in Bumstead's case does not match the record.  According to documents attached to Petitioner's appellate brief, the circuit court dismissed Bumstead's case without prejudice because the district court would not comply with an order to hold a second preliminary examination.  Bumstead argued that his bindover from the district court was improper because no evidence from the preliminary examination hearing showed that he knew, had reason to know, or could reasonably be expected to know, that the victim was a child, as required under Mich. Comp. Laws § 750.145(c)(2).  (Attach. to Br. on App., ECF No. 5-11, PageID.504.)  Apparently, the district court stated that the defendant's knowledge about the victim's age was irrelevant.  (*Id.*)  To correct this mistake, the circuit court remanded the case for another preliminary examination, but the district court refused to hold one. (*Id.*, PageID.507.)   There is no indication that the district court made the same mistake in Petitioner's case.

> intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutional standards].

*Tollett*, 411 U.S. at 267.   Consequently, a knowing and voluntary guilty plea waives all nonjurisdictional defects in the proceedings, including a claim of ineffective assistance of counsel that does not relate to the voluntariness of the plea.  *See Rice v. Olson*, No. 16-1125, 2016 WL 3877866, at *2 (6th Cir. July 15, 2016) (citing *United States v. Stiger*, 20 F. App'x 307, 308-09 (6th Cir. 2001)).  The same logic applies to *nolo contendere* pleas like Petitioner's.  *See Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) (discussing the waiver rule in *Tollett* and noting that "[a] nolo contendere plea stands on equal footing with a guilty plea").  Accordingly, Petitioner is barred from challenging his plea or conviction on the basis that the bindover was flawed.

### E.  Ineffective assistance of counsel (advice regarding the charges)

Petitioner also claims that he received ineffective assistance of counsel in connection with his plea because his attorney informed him that if he went to trial, he would be found guilty of conspiracy to commit child sexually abusive activity under Mich. Comp. Laws § 750.145c(2).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350

U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill*, 474 U.S. at 58. Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* In other words, "[w]here . . . a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* at 56 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

When a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any

reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

Petitioner cannot succeed in this case because he has not shown that counsel's advice was professionally unreasonable.  Indeed, the trial court agreed with the substance of his counsel's advice.  At the hearing on the motion to withdraw the plea, the following exchange occurred:

> THE DEFENDANT: . . . [My attorney] told me--the first time he saw me was in district court in the in the waiting room for where you go to court. We talked. We discussed the case.  He felt that I had a really rough chance on beating the child sexual abusive material.  I told him--I said there's no way.
>
> I said there's no way.  I'm innocent of the crime.  It's for the purpose of producing.  I said the prosecution has to prove that I had intention to produce or I produced, which they don't.  He told me--he said no, other purposes. . . .  The part [of the statute] where it says other purposes actually means to produce for other purposes--instead of personal or distributional.  That means if you produce it for any other purpose you're still guilty of that crime.  Not if you knowingly allow a child to engage in sexual material for any other purpose.
>
> The only requirement for that crime for anybody to be found guilty is for the purpose of producing.  There's a requirement for that crime.  He felt I was guilty.  I feel he mislead me on it and with him misleading me on that is another reason I took the plea is because I figured that he wasn't going to represent me at trial. . . .  I shouldn't have to go back on the statute and be like no this--that--for other purposes if--correct me if I'm wrong, that meant for produce for other purposes besides additional personal, distributional or other purposes.
>
> THE COURT:  I'm just going to say this Mister Doyle; I believe Mister Varga's interpretation of the statute is correct.  I believe Mister Varga's interpretation of that statute the way he expressed it to you is correct.  In my reading of that, his interpretation is adequate and correct.

(1/20/2015 Mot. Hr'g Tr. 17-18.)

To properly understand Petitioner's ineffective-assistance claim, it is important to recognize that Petitioner was charged with two different offenses under Mich. Comp. Laws § 750.145c, both of which relate to child sexually abusive activity or material.  The felony information and complaint initially charged Petitioner with conspiracy to commit child sexually abusive activity for the purpose of producing child sexually abusive material.  (First Am. Compl., ECF No. 14-1, PageID.842-843; Information, ECF No. 14-1, PageID.845-847.)  The relevant statute describes this offense as follows:

> A person who persuades, induces, entices, coerces, causes, or knowingly allows a child to engage in a child sexually abusive activity for the purpose of producing any child sexually abusive material, or a person who arranges for, produces, makes, copies, reproduces, or finances, or a person who attempts or prepares or conspires to arrange for, produce, make, copy, reproduce, or finance any child sexually abusive activity or child sexually abusive material for personal, distributional, or other purposes if that person knows, has reason to know, or should reasonably be expected to know that the child is a child or that the child sexually abusive material includes a child or that the depiction constituting the child sexually abusive material appears to include a child, or that person has not taken reasonable precautions to determine the age of the child is guilty [of a felony.]

Mich. Comp. Laws § 750.145c(2).  Generally speaking, this provision targets the creation of child pornography.  Some variations of this offense require actions taken "for the purpose of producing child sexually abusive material."  *See id.*

The offense to which Petitioner pleaded no contest—distributing or promoting of child sexually abusive activity—is different.  The statutory provision describing that offense targets the distribution and promotion of child pornography.  It states:

> [A] person who distributes or promotes, or finances the distribution or promotion of, or receives for the purpose of distributing or promoting, or conspires, attempts, or prepares to distribute, receive, finance, or promote any child sexually abusive material or child sexually abusive activity if that person knows, has reason to know, or should reasonably be expected to know that the child is a child or that the child sexually abusive material includes a child or that the depiction constituting the child sexually abusive material appears to include a child, or that person has not taken reasonable precautions to determine the age of the child is guilty of a crime[.]

Mich. Comp. Laws § 750.145c(3).  This provision does not mention a "purpose of producing child sexually abusive material."  Thus, when Petitioner argued to the state court that his attorney gave him bad advice about the "purpose" requirement, Petitioner was clearly referring to advice about the original charges against him under Mich. Comp. Laws § 750.145c(2), not the charges under Mich. Comp. Laws § 750.145c(3) to which he pleaded no contest.

Similarly, when Petitioner argues in his petition that  "he [was] misinformed as to the law in regards to the charges of Conspiracy to Commit Child Sexually Abusive Activity" and that "his trial counsel informed him that he had no chance at a not guilty verdict" on the conspiracy charges (Pet., ECF No. 1, PageID.31, 32.), Petitioner is clearly referring to the advice he received about the conspiracy charges that were dismissed by the plea agreement, i.e., the charges under Mich. Comp. Laws § 750.145c(2) and Mich. Comp. Laws § 750.157a (the conspiracy statute), not his attorney's advice regarding the charges to which he pleaded no contest.  Petitioner did not plead to any conspiracy charges.

Petitioner cannot demonstrate that counsel's advice was unreasonable because the evidence available to this Court would readily support a conviction under Mich. Comp. Laws § 750.145c(2).  That statute defines "child sexually abusive activity" as a child engaging in a "listed sexual act," Mich. Comp. Laws § 750.145c(1)(n), which includes "sexual intercourse, erotic fondling, sadomasochistic abuse, masturbation, passive sexual involvement, sexual excitement, or erotic nudity."  Mich. Comp. Laws § 750.145c(1)(i).  In addition, "child sexually abusive material" means "any depiction . . . of a child . . . in a listed sexual act."  Mich. Comp. Laws § 750.145c(1)(o).  Finally, a "child" is a person under the age of 18.  Mich. Comp. Laws § 750.145c(1)(c).

The transcripts from the preliminary examination hearing indicate that Petitioner engaged in "listed sexual acts" with a child victim and intentionally participated in the creation of photographs of that activity.  The photos apparently show Petitioner posing next to the victim, who was "in various states of undress, . . . partially clothed to completely naked," and "in sexually promiscuous poises [sic]."  (3/6/2014 Prelim. Examination Tr. 10, 26, ECF No. 5-3.)  Petitioner was looking directly at the camera, "flashing hand signs," and in at least one of the pictures, his "penis is sticking out of his pants."  (*Id.* at 10-11.)  From these pictures, a reasonable jury could conclude that Petitioner had enticed, induced, or knowingly allowed a child to engage in "passive sexual involvement" or "erotic nudity," for the purpose of creating photographs of this activity. Petitioner's active and willing participation in the pictures is sufficient to infer a purpose to create them (with help from the photographer).  Alternatively, a jury could conclude from Petitioner's conduct and presence in the photographs that Petitioner "arranged for" the child sexually abusive activity depicted in them.  Mich. Comp. Laws § 750.145(c)(2).

In short, a jury could have found Petitioner guilty of a felony under Mich. Comp. Laws § 750.145c(2) in several different ways, relying almost entirely on the photographs alone. Faced with photographic evidence of Petitioner's guilt, it was perfectly reasonable for Petitioner's counsel to tell him that it would be difficult to prove his innocence, and to advise him to plead to offenses with much lower sentences.

When Petitioner sought to withdraw his plea, he apparently believed that he was innocent of child sexually abusive activity under Mich. Comp. Laws § 750.145c(2) because he did not act with the "purpose to produce" the photographs, and no evidence demonstrated that he had such a purpose.  Petitioner was and is mistaken.  As discussed, the photographs themselves provide evidence from which a jury could infer such a purpose.

20

Moreover, there are ways of violating the statute that do not require a purpose to produce child sexually abusive material.  As the Michigan of Appeals has explained:

> This Court has recognized that MCL 750.145c(2) applies to three distinct groups of persons.  *People v. Adkins*, 272 Mich. App. 37, 40, 724 N.W.2d 710 (2006).  The first category includes a person "who persuades, induces, entices, coerces, causes, or knowingly allows a child to engage in a child sexually abusive activity for the purpose of producing any child sexually abusive material. . . ."  MCL 750.145c(2); *Adkins*, 272 Mich. App. at 40, 724 N.W.2d 710.  This category refers to those who are engaged in the production of pornography. . . .  The second category includes a person who "arranges for, produces, makes, copies, reproduces, or finances . . . any child sexually abusive activity or child sexually abusive material. . . ."  MCL 750.145c(2); *Adkins*, 272 Mich. App. at 41, 724 N.W.2d 710.  The last category is defined to include a person "who attempts or prepares or conspires to arrange for, produce, make, copy, reproduce, or finance any child sexually abusive activity or child sexually abusive material. . . ."  MCL 750.145c(2); *Adkins*, 272 Mich. App. at 41, 724 N.W.2d 710.  The use of the disjunctive "or" in the second and third categories clearly and unambiguously indicates that persons who arrange for or attempt or prepare to arrange for child sexually abusive activity face criminal liability.  See *Adkins*, 272 Mich. App. at 41, 724 N.W.2d 710.  "The Legislature thus omitted from the second and third groups subject to criminal liability any requirement that the individuals therein must have acted for the ultimate purpose of creating any child sexually abusive material, a specific requirement applicable to the first group of criminals."  *Id.* at 42, 724 N.W.2d 710.

*People v. Willis*, 914 N.W.2d 384, 388 (Mich. Ct. App. 2018).

As indicated, those who simply "arrange for or attempt or prepare to arrange for" child sexually abusive activity violate the statute, whether or not their ultimate purpose is to create child sexually abusive material.  *See id.*  Petitioner's conduct with the victim could be construed as "arranging for" child sexually abusive activity, in which case it would not matter whether he had a purpose to produce the photographs.  Thus, Petitioner's belief that counsel provided ineffective assistance is founded upon a misunderstanding of the law.  As the state court told Petitioner when he sought to withdraw his plea, counsel's interpretation of the law was correct.  Therefore, counsel's advice was not unreasonable.

21

Petitioner also contends that the sexual acts depicted in the photographs were consensual; however, that is irrelevant.  There is no consent defense in the statute, presumably because a minor cannot consent to sexually abusive activity.

Accordingly, Petitioner has not demonstrated that counsel's advice was unreasonable, let alone that the state court's decision rejecting Petitioner's ineffective-assistance claim is contrary to, or an unreasonable application of, clearly established law.  Consequently, Petitioner cannot show that counsel's advice undermined the voluntary and intelligent nature of his plea.

### F.  Ineffective assistance of counsel (failure to investigate)

In his reply in support of his petition under § 2254, Petitioner asserts that his attorney was aware that Petitioner had asked the victim about her age, and she told him "in no uncertain terms" that she was 19 years old.  (Reply, ECF No. 6, PageID.816.)  In other words, Petitioner apparently believes that he had a defense to the charges related to child sexually abusive activity because he took "reasonable precautions to determine the age of the child[.]" Mich. Comp. Laws § 750.145c(2).  Petitioner contends that his attorney was ineffective for failing to investigate this issue and develop an adequate defense.

Petitioner's claim that his attorney should have investigated his effort at determining the victim's age was raised for the first time in Petitioner's reply brief.  Consequently, this claim is not properly before the Court.  *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005) (noting that "argument . . . first presented in [petitioner's] traverse rather than in his habeas petition . . . was not properly before the district court, and the district court did not err in declining to address it").

Even assuming that the foregoing claim is properly before the Court, it would not succeed because it is unsupported.  At the outset, I note that Petitioner's claim is undermined by the state court's belief, which Petitioner does not challenge, that he could not remember the events at issue due to "acute intoxication."  That being the case, it is not clear how Petitioner could remember asking the victim her age.

More importantly, Petitioner does not indicate what his attorney could have done to develop his defense.  According to the preliminary examination transcript, the victim did not remember seeing Petitioner until she woke up and he was on top of her in his bedroom.  (*See* 2/28/2014 Prelim. Examination Tr. 43, ECF No. 5-2.)  Thus, it appears that the only evidence in support of Petitioner's defense would have been Petitioner's testimony, which did not require further investigation or development.  Petitioner has not shown that his attorney acted unreasonably by failing to pursue this line of inquiry.

In short, Petitioner's claim regarding counsel's failure to investigate Petitioner's attempt to determine the victim's age is not properly before the Court.  It is also meritless.

### G.  Competence

In his reply in support of the petition, Petitioner also asserts that "the record" shows that he suffers from "ADD/ADHD"; Petitioner claims that his attorney should have requested a hearing to determine his competence before allowing him to enter his plea.  (Reply, ECF No. 6, PageID.817.)  This claim is also not properly before the Court because it was raised for the first time in Petitioner's reply brief.  *See Tyler*, 416 F.3d at 504.

Even if this claim is properly before the Court, it should be denied because it is meritless.  A criminal defendant may not plead guilty (or no contest) unless he does so competently and intelligently.  *Godinez v. Moran*, 509 U.S. 389, 396 (1993).  The test for competence is whether

23

the defendant has "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'" *Id.* (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)). A defendant is not competent to plead guilty or no contest if "'he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense.'" *Id.* (quoting *Drope v. Missouri*, 420 U.S. 162, 171 (1975)).

Contrary to Petitioner's assertions, nothing in the record supports his claim that he has attention deficit disorder (ADD) or attention deficit hyperactivity disorder (ADHD). And even assuming that Petitioner has been diagnosed with these conditions, a diagnosis alone is not sufficient to demonstrate incompetence. Petitioner's actual symptoms and behavior are what matter, not his diagnosis. *See United States v. Allen*, 665 F. App'x 531, 533-34 (6th Cir. 2016) ("For the district court to have had a duty to order a competency hearing, [the defendant] would have needed to exhibit behavior demonstrating that she lacked 'either a sufficient present ability to consult with [her] lawyer with a reasonable degree of rational understanding or a rational as well as factual understanding of the proceedings against [her].'"). Nothing in the record suggests that Petitioner was not able to understand the proceedings against him or to consult with his attorney. Indeed, at his plea hearing, Petitioner repeatedly told the court that he understood what the court was explaining to him about the contents and consequences of his plea. Accordingly, Petitioner has not shown that his plea was invalid due to lack of competence or that his attorney provided ineffective assistance by failing to raise the issue.

In summary, Petitioner's many challenges to the validity of his plea provide no basis for granting habeas relief.

24

IV.    <u>Ground II:  Sentencing</u>

Next, Petitioner challenges his sentence as unreasonable because the sentencing court allegedly scored several offense variables improperly when determining Petitioner's range of sentence under the state sentencing guidelines.  Petitioner contends that, if the guidelines had been properly scored, the advisory range of his minimum sentence would have been 5 to 23 months.

This claim is factually baseless because the sentencing court did not use the sentencing guidelines to determine Petitioner's range of sentence.  Instead, it used "the guidelines range that the prosecuting attorney, the defense counsel and the Court all stipulated to which was 19 to 47 months."  (2/17/2015 Sentencing Tr. 21, ECF No. 5-8.)  Indeed, when discussing objections to the scoring of the guidelines filed by Petitioner's attorney, the court stated there was no "need to argue the scoring" because the court was "willing to accept" the guideline range in the plea agreement. (*Id.* at 4.)  Thus, the court was simply following the agreement that Petitioner made with the prosecutor.  There is no evidence that the court relied on particular facts or offense variables to determine Petitioner's range of sentence.  Accordingly, Petitioner's claim that the court erred when applying various offense variables to come up with a guideline range of 19 to 47 months is utterly meritless.  Moreover, Petitioner cannot complain about the reasonableness of a range that he expressly agreed to as part of the plea process.  Accordingly, Petitioner's challenges to his sentence in Ground II are also meritless.

**<u>Certificate of Appealability</u>**

I have determined that the petition under 28 U.S.C. § 2254 should be denied because it is meritless.  Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a

certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I respectfully recommend that the Court deny Petitioner a certificate of appealability.

## **Recommended Disposition**

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.  I also respectfully recommend that a certificate of appealability be denied.

Dated:   June 12, 2019                             /s/ *Maarten Vermaat*
                                                              Maarten Vermaat
                                                              United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).